The Jeffersonville, Madison and Indianapolis R. R. Co. *v.* Lyon.

No. 7457.

THE J., M. & I. R. R. Co. *v.* LYON.

RAILROAD.— *Killing of Animals.*—*Pleading.*—A complaint against a rail-- road company for the negligent killing of live-stock, which does not allege that the killing was done without fault or negligence on the part of plaintiff, is not good at common law.

SAME. — *Fencing Track.* — In a complaint against a railroad company, under the statute, for the killing of animals, an allegation that, at the place where the animals entered upon the track, the road was not fenced, is sufficient; if it is not the duty of the company to fence the road at the place in question, such fact is matter of defence.

SAME.—*Statutory Liability.*—Under the statute, it is not the place of the killing, that governs the liability of a railroad company, but the place of the entry, of the animals upon the track.

From the Shelby Circuit Court.

*S. Stansifer, A. Blair, E. P. Ferris* and *W. W. Spencer,* for appellant.

*A. Major* and *S. Major,* for appellee.

WOODS, J.—This case is here the second time—see 55 Ind. 477. The first error now assigned brings in question the sufficiency of the facts averred in the first paragraph of the complaint to constitute a cause of action. This paragraph, as now drawn, is in all respects essentially the same as it was on the former appeal, and we need not give another copy.

For the same reason as was announced before, it is not a good complaint at common law, for the negligent killing of the animals, independently of the statute requiring the fencing in of railroads. There is no allegation that the injury was done or suffered without fault or negligence on the part of the plaintiff. The averment that the mules and horse, without the fault of the plaintiff, strayed upon the track of the defendant's road, does not, under the circumstances shown in the plea, go far enough to show that the injury occurred without his fault. We held before, that a good cause of action under the statute was shown, and we perceive no reason for changing our opinion, even if the

matter were not *res adjudicata* between the parties. See *Dodge* v. *Gaylord*, 53 Ind. 365. The plea as it now stands shows, that, at the place where the animals entered upon the track, the road was not fenced : while the original averment in this respect was, that it "was carelessly and negligently left unfenced and unenclosed." The allegation "not fenced" is sufficient, and, if in fact it was not the duty of the defendant to enclose the place in question, that was matter of defence. *The J., M. & I. R. R. Co.* v. *Brevoort*, 30 Ind. 324.

The motion for a new trial contains numerous alleged causes therefor, but we shall direct our attention to such only as counsel have deemed it worth while at least to mention in their brief.

It is claimed that the second instruction given the jury was wrong. The instructions shown to have been given are not numbered, and it is not, therefore, manifest that there was any error in this respect. From the brief, it is inferable that the objection was aimed at the instruction given, to the effect that, under the statute, it is not the place of the killing that governs the liability of the company, but it is the place of entry upon the railroad track. This was not only correct in principle, but strictly applicable to the evidence in the case. The verdict, being based on the first paragraph of the complaint, must be upheld, if at all, not on the ground of the defendant's negligence, but on the theory that the animals entered on the track of the defendant's railroad at a point which could have been, but was not, fenced. The appellant, however, insists that this theory is not sustained by sufficient evidence, and this is the remaining question to be decided.

The bill of exceptions, in which the evidence is brought before us, contains a plat of the portion of the road involved in the dispute, and upon an inspection of this plat, which is shown to be sufficiently accurate, and an examination of the

evidence, we are asked to say that the verdict of the jury was not warranted by evidence fairly tending to support it. This we are not able to do. The plat shows a mile and three quarters in length of the railroad, lying in a straight line from north to south, and including St. John's Switch. The south end of this portion of the road is between two pairs of cattle-guards, which are one mile apart. Just north of the more northern cattle-guard, a county road coming from the east crosses the railroad track, and immediately after crossing turns northward at an acute angle with the railroad, and, going nearly half a mile, curves sharply to the eastward and recrosses the railroad track at the north end of St. John's Switch, and, "going east from the railroad 80 or 100 feet, strikes a pike road which goes north on the east side of the railroad some 300 yards, where it again crosses the railroad," going in a northwesterly direction.

The animals which were injured, two mules and a horse, strayed from the home of their owner at a place three miles northeast of the place described, and were seen first on the railroad track by the witness, B. F. Connor, at a point about 200 yards north of the north end of the switch, designated on the plat by the letter "N." From this point they were driven or fled, before a freight train of the defendant, along the railroad track, southward across the county road aforesaid, by and along the switch, to and across the county road again to the first cattle-guard, which they jumped, and the freight train having passed, without injuring, left them between the two pairs of cattle-guards, where two hours afterward the mules were killed and the horse injured by a passenger train and locomotive going north. During this two hours, the animals had passed from the track and right of way (100 feet wide) of the defendant into a four-acre field of one Treons, between which field and said track and right of way there was no fence, but the right of way between the cattle-guards aforesaid and this field, taken together, consti-

tuted an enclosure surrounded by said cattle-guards and good fences connected therewith. From this field the animals passed back upon the track of the defendant's road and were injured as before stated. From the north end of the switch northward for more than a mile, including the point "N," where the animals were first seen, the road was not fenced; this part of the road-bed, to within a short distance of the highway crossing at the north end of the switch, being a fill as much as ten feet high, but presumably getting lower as it approached the switch.

Now, it is clear that the company was not bound to cut off approach to its switch and adjacent pens, cribs, loading and unloading places, either by fence or by cattle-guards, but it is not shown that the portion of the track, north of the county road at the end of the switch, could not have been fenced and guarded, without inconvenience to the company or to the public. One witness expressly testified that there was nothing to prevent a fence from being made and kept up there, and we see nothing to weaken, much less to over-throw, his testimony; and it is on this part of the road the animals were first seen, and the jury were clearly warranted in inferring that they entered upon the track there, or even at a point further north, where unquestionably the road might have been fenced.

We say nothing of the significance of the fact, that before suffering injury the animals got off of the defendant's right of way into said field, and returned thence to the track again and were killed or hurt. Leaving this out of view, we do not consider the defendant excused from liability for the injury done, because the animals fled before one of defendant's trains along portions of the track, which needed not to be fenced, and jumped into an enclosure where they remained until killed by another train than the one before which they fled. The injury is directly traceable to their getting on the track where, for all we can see, and we presume the jury

found, it ought to have been fenced. In *The Toledo, W. & W. R. W. Company* v. *Howell*, 38 Ind. 447, it was held, that, "If stock comes on to a road where it is the duty to fence, and wanders to, and is killed at, a place where it is not the duty to fence, still the company is liable;" and *a fortiori* must the company be liable, if the stock is driven before a locomotive to a place where there was no duty to fence, or where there was an enclosure, and there killed or injured.

Judgment affirmed, with costs.