The Toledo, St. Louis and Kansas City Railroad Company v. Jackson.

Filed Dec. 13, 1892.

———◆———

No. 579.

THE TOLEDO, ST. LOUIS AND KANSAS CITY RAILROAD COMPANY v. JACKSON.

RAILROAD.—*Action Against for Killing of Animal.—Inability to Fence.—Burden of Proof.*—In an action against a railroad company to recover damages for the killing of an animal, which it was alleged entered upon the defendant's right of way at a point where it should have been but was not securely fenced, the burden of proof is on the defendant to show that the company could not fence its track at the particular place where the animal entered upon the right of way without endangering the safety of its employees.

SAME.—*Animal Taken Upon Right of Way.—Effect of on Right of Recovery.*—Where, in such an action, the evidence showed that the plaintiff had taken his horses upon the company's right of way, and allowed them to graze there a short time, but before the train arrived he had taken them upon the public highway, he, with the two horses he was leading, being fifty or sixty feet, and the animal that was killed, which was following, being about thirty feet west of the crossing when said train approached that frightened it and afterwards killed it, the fact that he had previously taken said animals upon and over said company's right

The Toledo, St. Louis and Kansas City Railroad Company *v.* Jackson.

of way will not prevent his recovery, provided he is otherwise entitled to recover.

SAME.— *Witness.—Opinion.*—It was not error for the court, in such action, to refuse to permit a witness to state what, in his opinion, would be the effect of putting in cattle-guards across any point crossing the side track or main track where a switch runs parallel with it, and what would be the effect in the particular case in question. This was a matter for the jury to determine.

EVIDENCE.—*Exclusion of.—How Made Available on Appeal.*—The exclusion of testimony can only be made available by asking a pertinent question of a witness on the stand, and if objection is made, stating to the court what the witness will testify to in answer to said question, and if the court sustains the objection, reserving an exception.

From the Grant Circuit Court.

*C. Brown, S. O. Bayless* and *C. G. Guenther,* for appellant.
*E. R. Wilson* and *J. J. Todd,* for appellee.

NEW, J.—This action originated before a justice of the peace. Judgment was rendered for appellee, and appellant appealed.

In the circuit court a demurrer for want of facts was overruled, and the cause tried by a jury, who returned a verdict in favor of appellee, assessing his damages at the sum of one hundred dollars.

Over appellant's motion for a new trial the court rendered judgment on the verdict of the jury, and from said judgment this appeal is prosecuted.

The following errors are assigned:

1st. The court erred in overruling the demurrer to the complaint.

2d. The court erred in overruling the motion for a new trial.

Counsel for appellant do not discuss the question raised by the demurrer, and under the well settled rule of this court an error assigned but not discussed is considered as waived.

The motion for a new trial presents the following causes therefor:

1st. The verdict of the jury is not sustained by sufficient evidence.

2d. The verdict of the jury is contrary to law.

3d. The court erred in refusing to permit David Brown to testify for what purpose the switch was used, relative to shifting cars and freight trains.

4th. The court erred in refusing to allow R. S. Marshall to testify as to what the effect would be of putting in cattle-guards across any point crossing the side-track or main track where a switch runs parallel with it.

5th. The court further erred in refusing to permit R. S. Marshall to state what would be necessary to securely fence in the railroad track east of the crossing on the highway with the main track, so as to prevent animals, such as horses and the like, from going upon the right of way.

6th. The court erred in refusing to permit R. S. Marshall to testify that the placing of cattle-guards over the defendant's railroad track and side-track at the crossing, near Liberty Center, would be dangerous and unsafe and endanger the lives and limbs of the company's employees in the management and operation of its trains at that particular place.

7th. The court erred in permitting Charles Powell to testify as to the length of time the public highway that crosses the railroad where the animal was killed had been established.

8th. The court erred in permitting Charles Powell to testify as to whether or not there was anything that would prevent the construction of cattle-guards and wing fences north of the highway and at the place where the highway crosses the railroad.

9th. The court erred in permitting Daniel Brown to testify with reference to the distance a pile of ties lay from the north track of defendant's railroad.

10th. The court erred in giving instructions from No.

1 to No. 5, inclusive, offered by the plaintiff. The court erred in refusing to give instructions Nos. 5 and 9, which were asked to be given by the defendant.

11th. The court erred in giving instructions numbered 8 and 9, which were given by the court of his own motion.

It was agreed upon the trial that the plaintiff was the owner of the animal killed and that it was of the value of one hundred dollars; that said animal was struck and killed upon defendant's railway by a locomotive drawing a train of thirty cars, going in an easterly direction, and that it was killed at the point mentioned in the complaint; that it happened on the 1st day of June, 1890.

In substance, the following facts are disclosed by the evidence:

The railroad owned and operated by the defendant runs in a northeast and southwest direction through the village of Liberty Center, in Wells county, Indiana, the same being a regular station maintained by said company. Besides the main track there are two side-tracks, or switches, used by said defendant for the purpose of handling and operating its trains. There is a public highway running east and west through said village and crossing the main track and the switch on the south side of the main track at a point a short distance east of the east line of said village. Said company has a fence that joins the fence on the east side of the piece of land known as the Nicely lot, at a point nineteen feet north of the southeast corner of said lot, and runs in a northeasterly direction parallel with said railroad track, inclosing its right of way on the north side. Said Nicely lot is bounded on the south by the public highway, and the east line is the east line of said village, the southeast corner of said lot being about forty feet northwest of said crossing. There was no cattle-guard or wing fences to prevent animals from entering upon said company's right

The Toledo, St. Louis and Kansas City Railroad Company *v.* Jackson.

of way on the north side of said railroad, south of the point where said company's fence joins the Nicely fence.

On the day mentioned the appellee took two of his horses from his stable for the purpose of watering them, and the animal that was afterward killed ( a gray mare ) escaped from his stable and followed him. He led the two horses by means of halters, and with the gray mare loose and following, he took them along said highway east, across said company's track and on its right of way for the purpose of allowing said horses to graze; that after remaining there a short time he returned to the public highway, leading his two horses and said gray mare following; that when he had reached a point on said highway west of said railroad crossing about 50 or 60 feet, and said gray mare following him had reached a point on said highway about 30 feet west of said crossing a train came from the west, and when it approached them, the gray mare becoming frightened, turned and ran east along said highway until she reached the southeast corner of said Nicely lot, when she turned north around said southeast corner and on said company's right of way. She then ran in a northeasterly direction along said company's track a short distance, when she turned on the main track and ran along in front of said engine and train until the same finally ran against and killed her, about eighteen hundred feet northeast of said crossing.

We learn from the foregoing facts that said animal entered upon said company's right of way at a place where the same was not fenced.

The burden was on the defendant to show that the company could not construct and maintain a cattle-guard and wing fences at this point without endangering the safety of its employees.

The statute that makes it the duty of railroad companies to fence their tracks, so declares in general terms,

and but for the liberal construction placed upon this statute by our Supreme Court there would be no exceptions, and said company would be required to fence against animals entering upon their right of way at all places. Hence, the burden was on the defendant to show that the company could not fence its track at the particular place where said animal entered upon said right of way without endangering the safety of its employees. *Pittsburgh, etc., R. W. Co.* v. *Laufman,* 78 Ind. 319; *Fort Wayne, etc., R. R. Co.* v. *Herbold,* 99 Ind. 91; *Evansville, etc., R. R. Co.* v. *Tipton,* 101 Ind. 197; *Chicago, etc., R. R. Co.* v. *Modesitt,* 124 Ind. 212.

The evidence is somewhat conflicting, and while it is true that there was evidence tending to show that said company could not construct and maintain a cattle-guard and wing fences at the point where said animal entered upon said company's right of way without endangering the safety of its employees, there was considerable evidence showing the contrary, and we can not say that there was not evidence sufficient to support the verdict.

Appellant claims that appellee was guilty of negligence, and that his allowing said mare to follow him upon said company's right of way was an abandonment of said animal and should prevent his recovery in this action.

While it is true that the law in this State is well settled that an owner who abandons his animal can not recover, although it entered upon the track of a railroad and was killed at a place where said company failed .to perform its statutory duty by fencing its track, the rule is not applicable in this case, as the facts here do not show an abandonment.

The appellee had taken his horses upon the company's right of way and allowed them to graze there a short time, but before the train arrived he had taken them on the public highway, he, with the two horses he was leading, being fifty or sixty feet and said gray mare being

about thirty feet west of said crossing when said train approached that frightened said mare and afterwards killed her. The fact that he had previously taken said animals upon and over said company's right of way will not prevent his recovery, provided he is otherwise entitled to recover. When the train approached he and his horses were upon the public highway a safe distance from the track, and the fact that they had previously been upon the right of way could not relieve the company from liability on account of their failure to fence.

In the case of *Louisville, etc., R. R. Co.* v. *Hart*, 2 Ind. App. 130, this court said:

" The fact that the animals had been previously driven over the private road upon the right of way can not defeat the appellee's right to recover. When the train approached they were at a safe distance from the track, in competent hands, and their previous fault, if such it were, would not absolve the company from its legal liability for its failure to do its duty."

There was no error committed by the court in refusing to allow Daniel Brown to testify for what purpose the switch was used, as it was not a cross-examination. The appellant could have made said Brown his own witness and proven said fact by him.

In the 4th and 6th reasons assigned in the motion for a new trial the appellant complains because the court refused to allow the witness to state what, in his opinion, the effect would be of putting in cattle-guards across any point crossing the side-track or main track where a switch runs parallel with it, and what would be the effect in the particular case in question.

The court properly excluded the evidence. It was for the jury to determine from the evidence whether the company was required to fence its road at the place where said animals entered upon its right of way or whether said company was excused from putting in a cattle-guard

and wing fences for the reason that it would endanger the safety of its employees. *Bloomington, etc., R. W. Co.* v. *Hale*, 93 Ind. 79; *Chicago, etc., R. R. Co.* v. *Modesitt, supra; Pennsylvania Co.* v. *Mitchell*, 124 Ind. 473.

Appellant complains on account of the court's refusal to allow the witness, R. S. Marshall, to answer a certain question propounded and assigns said ruling of the court as the 5th reason for a new trial.

The ruling of the court is not properly presented, as counsel for appellant did not state to the court, after objection to the question was made, what said witness would testify to in answer to said question. It has long been the settled rule in this State that the exclusion of testimony can only be made available by asking a pertinent question of a witness on the stand, and if objection is made, stating to the court what the witness will testify to in answer to said question, and if the court sustains the objection, reserving an exception. *Lewis* v. *Lewis*, 30 Ind. 257; *Higham* v. *Vanosdol*, 101 Ind. 160; *Gipe* v. *Cummins*, 116 Ind. 511; *Kern* v. *Bidwell*, 119 Ind. 226.

We find no error in allowing the witnesses to answer the questions set out in the 7th, 8th and 9th reasons for a new trial. There was no error committed by the court in giving instructions from No. 1 to No. 5, inclusive, asked by the plaintiff, and also instructions numbered 8 and 9, given by the court of his own motion.

What we have heretofore said concerning the plaintiff having been on the company's right of way with his said horses previous to the approach of the train disposes of the questions raised on the giving of said instructions. The instructions given by the court stated the law correctly. We think there was no error committed in refusing to give instructions numbered 5 and 9, asked by the defendant.

We find no error in the record.

The judgment is affirmed.

Filed Dec. 15, 1892.