## J. G. LYNN, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, April 1, 1912.    Motion for Rehearing · Overruled, May 6, 1912.

1. RAILROADS: Killing Animals: Failure to Fence: Sufficiency of Evidence. In an action under the double damage statute for the killing of two of plaintiff's horses, it appeared that the horses were found dead on defendant's right of way and plaintiff's evidence, when fairly considered, and by reasonable inferences therefrom, is *held* sufficient to show that the animals entered upon defendant's right of way through the gap in the wing fence a quarter of a mile south of where they were killed, and at a place where defendant was required to maintain a lawful fence.

2. ————: ————: ————: Burden of Proof. In an action against a railroad company for double damages for killing stock the plaintiff is required to prove either directly or indirectly from physical facts and circumstances that the animals entered the right of way at a place where the statute requires the fences or cattle-guards to be erected and maintained and that the statute had not been complied with.

3. ————: ————: ————: Place Animals Entered: Presumptions. In an action against the railroad company for double damages for killing plaintiff's horses on account of failure to fence, the defendant contended that in the absence of evidence to the contrary the inference is that the horses entered the right of way at a point opposite where they were found dead on the railroad track. In this case the fence opposite where

the horses were found dead was a lawful fence, but a quarter of a mile south was an open gap in a wing fence, the only place where the horses could have entered the right of way without jumping a lawful fence. *Held*, that the presumption contended for by defendant could not be applied to the facts in this case, but that the reasonable inference from all the facts and circumstances was that the horses entered the right of way through the gap in the wing fence.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard*, Judge.

AFFIRMED.

*R. T. Railey* and *N. A. Mozley* for appellant.

(1)    There is no proof in the record of where the animals alleged to have been killed entered the right of way, and the law in such case presumes that such entry was made at the point where the animals were found dead. Souders v. Railroad, 127 Mo. App. 123: Acord v. Railroad, 113 Mo. App. 99; Hurd v. Chappel, 91 Mo. App. 317; Ellis v. Railroad, 89 Mo. App. 243; Kinion v. Railroad, 39 Mo. App. 383; Duke v. Railroad, 39 Mo. App. 107. (2). Before respondent made a case which should have been given to the jury, the burden was on him to prove that his horses were killed by one of appellant's trains and that said horses entered the right of way at a point where appellant was required by law to erect and maintain fences and cattle-guards and had failed to do so. Respondent, having failed to make this proof, failed also to make a prima facie case and appellant's peremptory instruction prayed for at the close of the evidence. Ellis v. Railroad, 89 Mo. App. 243; Kinion v. Railroad, 39 Mo. App. 383.

*Abington & Phillips* for respondent.

(1)    Plaintiff's testimony made out a prima facie case against the defendant and the court did not com-

mit error in refusing the peremptory instruction asked by the defendant at the close of plaintiff's evidence. Jones v. Railroad, 44 Mo. App. 15; Lepp v. Railroad, 87 Mo. 139; Schlotzhauer v. Railroad, 89 Mo. App. 65; Walther v. Railroad, 55 Mo. 271; Briscoe v. Railroad, 25 Mo. App. 468; Goodwin v. Railroad, 53 Mo. App. 9. (2) Plaintiff could establish his case by cir cumstantial evidence as well as by direct testimony and could establish the fact that his horses entered defendant's right of way at a point that it was required by law to fence. 33 Cyc. 1294, 1306; Jones v. Railroad, 44 Mo. App. 15.

NIXON, P. J.—This is an action under the double damage act for the killing of two of plaintiff's horses. Plaintiff obtained judgment for $700 from which the defendant appealed.

The action was prosecuted under section 3145, Revised Statutes 1909, to recover double damages for the killing of two horses on the fifteenth day of December, 1910, at a point on appellant's railroad between Poplar Bluff and Harviell, Missouri, where it is alleged the defendant was required to maintain lawful fences and had failed to do so. The horses were found dead on the right of way, midway between Poplar Bluff and Harviell. The nature of their injuries was evidence of their having been struck by the cars. A quarter of a mile or more south of where said horses were found, at a crossing over the railroad track, defendant was at the time constructing a side track, and a portion of the wing fence connecting the cattle-guard with the lateral fence had been removed for that purpose and there was an open gap in the fence along the right of way. The place where the horses were found was seven or eight miles from plaintiff's home which was south of said point and three miles east of the railway track. Plaintiff claimed to have bought these horses somewhere in Butler county on the pub-

lic road from a man traveling through the state, and that they were therefore strange horses in the community. He stated that he took them to his home and turned them loose on the commons; that they ranged around his place for about a month, and then, according to his idea, undertook to go back to the place where he bought them from the stranger passing through the state. Some adverse comment is made by appellant on plaintiff's testimony as to how much he paid for the horses but that was properly a question for the jury and appellant must abide by their decision.

The evidence offered in this case at the trial tended to show the following state of facts: The town of Harviell and the city of Poplar Bluff are about six or seven miles apart, being the stations on defendant's railroad north and south of where plaintiff's animals were killed. The railroad between these two stations runs north and south. About half way between these stations the railroad is crossed by a public county road that runs east and west. Two miles farther north the railroad is crossed by another public road that runs east and west. Between these two public roads and on each side of the railroad are cultivated fields. This block of defendant's right of way consists of a stretch of land one hundred feet wide and two miles long. The nearest that this block of the defendant's right of way comes to the corporate limits of any city, town or village, is one and one-half miles from the corporate limits of the city of Poplar Bluff.

Under the statute it was the duty of the defendant to erect and maintain cattle-guards and wing fences connecting with its lateral fences along the northern boundary of the public road on the south end of this block of its right of way; it was also its duty to maintain lateral fences between its right of way and the fields on either side up to the north end of this block; it was also the duty of the company to erect and maintain cattle-guards and wing fences

connecting with its said lateral fences along the south-
ern boundary of the public road on the north end
of this block of its right of way. If the company had
performed these duties, it would have fenced a tract
of land in Butler county in the shape of a parallelo-
gram two miles long and one hundred feet wide. Now
it is conceded that it was the duty of the defendant
to erect and maintain lawful fences except where
cattle-guards were necessary (and at such places to
erect and maintain lawful cattle-guards) on all sides
of this parallelogram of land belonging to the defend-
ant. It follows as a matter of course that a horse
could not have gotten within the confines of the de-
fendant's right of way, bounded as above described,
without entering at a place where it was the duty of
the defendant to erect and maintain a lawful lateral
fence, a lawful wing fence, or a lawful catttle-guard;
and it matters not, as far as the liability of the de-
fendant to fence is concerned, at what point of this
parallelogram of defendant's right of way plaintiff's
horses entered because they must have entered at
some point where the defendant was bound to fence.

Plaintiff's horses were turned out and roved
at will over the country, there being no stock law in
force in the county, and were next found dead in the
parallelogram of right of way above described, some-
thing like one-fourth of a mile north of the gap in the
wing fence, this opening being the only place they
could have entered said right of way without jump-
ing a lawful fence. There was some evidence tend-
ing to show that this place where the fence was down
was on the shortest route between where the horses
were found dead and where they were last seen alive;
and that the place where they were found dead was
between plaintiff's home and the place where he bought
them.

The appellant's contention is that a prima facie case was not made and that its peremptory instruction requested at the close of all the testimony should have been given; that plaintiff under the double damage statute is required to prove, either directly, or from physical facts and circumstances, that the animals entered the right of way at a place where the statute requires the fences and cattle-guards to be erected and maintained, and that he had not made such proof. The appellant states as its legal position that there is no proof in the record showing where the animals alleged to have been killed entered upon the right of way and that the law in such case presumes that such entry was made opposite the point where the animals were found dead. In support of this position appellant has cited numerous cases from the appellate courts of this state. The liability of the defendant in this class of cases is statutory and plaintiff can only recover upon proof of the defendant's failure to lawfully fence at the place where the animals killed came upon the right of way as provided in section 3145, Revised Statutes 1909. The burden of making this proof is undoubtedly upon the plaintiff and his action fails unless he makes out a prima facie case. He is required to prove, either directly, or from physical facts and circumstances, that the animals entered the right of way at a place where the statute requires the fences or cattle-guards to be erected and maintained and that the statute had not been complied with. As stated, this need not be by direct testimony; proper circumstantial evidence of sufficient probative force will support the burden of proof; but the same must show that the animals entered at a place on the right of way where the defendant was required to erect and maintain a lawful fence or cattle-guards and had failed to do so. The evidence in this case is substantially harmonious, there being no serious conflict or dispute. The only question is

whether the plaintiff's evidence, fairly considered, and by reasonable deductions therefrom, is sufficient to show the place where the animals entered upon the defendant's right of way.

The question of the sufficiency of the evidence in a case under circumstances somewhat similar to the present case was presented to the Supreme Court of Iowa in Rhines v. Railway Co., 39 N. W. 912. In that case there was a break in defendant's fence where the company was required to maintain a lawful fence. Close by was a street crossing in which they were not required to maintain a lawful fence. The question arose as to the sufficiency of the evidence, and the court held that when there is no evidence as to whether the horses went on the track through a break in the defendant's fence, or at a street crossing, except that the last point to which they were traced was nearer the break in the fence, a finding that the horses went through the break, thus entitling plaintiff to double damages, is not supported by the evidence.

So in this case, if the facts and circumstances had failed to show that the animals killed entered the right of way at a place where the company was required to fence or at a place where it was not required to fence so that the question was left an open one whether it was probable that they entered at the one place or the other, in such an event, the plaintiff would have failed in his action, not having established a prima facie case under the conclusions reached by the Iowa court. But that is not this case. Here the plaintiff's horses could not have entered the right of way of the defendant and been killed where they were killed without having entered the right of way at a place where if the defendant had obeyed the statute they would have been repulsed by a lawful fence, either lateral or wing, or lawful cattle-guards.

The evidence in this case tended to show that the plaintiff's horses were traced traveling along defend-

ant's right of way in a northerly direction toward the place where they were purchased by the plaintiff, and that the place where the gap was open into the right of way was on the shortest route between where they were found and where they were last seen alive. The circumstances further tended to show that if the horses got on the right of way opposite the place where they were found dead, they must have passed the open gap which was between thirty and forty feet wide where other animals had entered upon the right of way, and have gone beyond that gap a quarter of a mile and then have jumped over a lawful fence to get on the right of way instead of having entered the open gap and then continued traveling northward in the direction they were already going to the point where they were found dead.

Appellant strenuously contends that the evidence is not sufficient to support the judgment in this case and invokes the presumption that in the absence of evidence to the contrary the inference is that the animals entered upon the right of way at a point oppo· site where they were found dead on the railroad track. This presumption or inference of fact in this class of cases was first authoritatively declared by our Supreme Court in the case of Jantzen v. Railway Co., 83 Mo. 171. That was an action for double damages for the killing of plaintiff's cow by the defendant com- pany. The evidence tended to show that a point along the defendant's right of way opposite where the cow was found dead should have been fenced under the requirements of the law but was not fenced as re- quired. There was no other evidence as to where the cow got on the track, and the appellant in that case as in this insisted that there was a complete failure of proof as it was not shown by the evidence where the animal got upon the defendant's track and that such a showing to make a prima facie for the plaintiff was indispensible to a recovery. The court in its

opinion said: ''There is no express statement in the testimony that the cow entered upon the track where she was killed. But the facts appear in evidence that her hair and blood and carcass were found on the track at a point which was not, but should have been, fenced. In the absence of evidence to the contrary the natural inference is that she entered upon the track at that point, not that she entered upon the track at a highway crossing and jumped over fences and cattle-guards to get there.'' This is the origin of the presumption sought to be applied in this case and expresses the whole extent of its operation. Under the evidence in this case the plaintiff's horses in order to have reached the point where they were killed—under the uncontradicted evidence—must have entered the right of way of the defendant through the gap that was not fenced, a quarter of a mile from where they were found dead, at a point where the defendant was required to fence, or they must have jumped over lawful fences or cattle-guards to get upon the right of way, as the whole parallelogram in which they were found dead, except the open gap, was surrounded with lawful fences and cattle-guards. As said in the Jantzen case, supra, ''Manifestly they could do this only by committing a trespass, a thing to be proved and not presumed.'' As the animals killed were horses— not mules—and as it was not shown that they were breachy, we know of no rule of law that requires us to presume that these particular animals had such propensities as to induce them to go a quarter of a mile beyond an open gap in order to get an opportunity to jump over a lawful fence to get upon the defendant's right of way. We are of the opinion that the evidence in this case was sufficient to establish a prima facie case for the plaintiff. The judgment is accordingly affirmed. All concur.